**EXHIBIT A**

22CV04363
Div11

## IN THE CIRCUIT COURT OF JOHNSON COUNTY, KANSAS

| | |
|---|---|
| MARK HUMMELL,<br><br>        Plaintiff,<br><br>v.<br><br>MV REALTY OF KANSAS LLC,<br><br>    <u>Serve Registered Agent</u>:<br>    CT Corporation System<br>    112 SW 7th Street<br>    Topeka, KS 66603<br><br>    and<br><br>MV REALTY PBC, LLC,<br><br>    <u>Serve Registered Agent</u>:<br>    Amanda J. Zachman<br>    219 N. Dixie Blvd.<br>    Delray Beach, FL 33444<br><br>        Defendants. | Case No.<br>Division<br><u>Pursuant to K.S.A. Chapter 60</u><br><br>**<u>JURY TRIAL DEMANDED</u>** |

### **<u>PETITION FOR DAMAGES</u>**

COMES NOW, Plaintiff Mark Hummell, by and through the undersigned counsel, and for his cause of action against Defendant MV Realty of Kansas LLC and Defendant MV Realty PBC, LLC, states and alleges as follows:

### **<u>PARTIES</u>**

1. Plaintiff Mark Hummell is a resident of the State of Kansas who at all times relevant to the allegations contained herein, based on information and belief, was jointly employed by Defendant MV Realty PBC, LLC and Defendant MV Realty of Kansas LLC ("Defendants").

2. Plaintiff worked as a realtor for Defendants and had been employed for a little over two months at the time of his termination.

3. Defendant MV Realty of Kansas LLC is and was at all times relevant to the allegations contained herein, and based on information and belief, a Kansas limited liability company, operating an entity in Kansas and registered to do business in Kansas as MV Realty of Kansas LLC.

4. Defendant MV Realty of Kansas LLC conducted and transacted substantial business in Kansas.

5. Defendant MV Realty PBC, LLC is and was at all times relevant to the allegations contained herein, a foreign limited liability company with its principal place of business in Florida.

6. Defendant MV Realty PBC, LLC conducted and transacted substantial business in Kansas.

7. At all times relevant to the allegations contained herein, based on information and belief, Plaintiff was paid by and jointly employed by Defendants.

8. Based on information and belief, Defendants both maintained a significant level of control and authority over Plaintiff's duties and responsibilities and terms and conditions of Plaintiff's employment.

9. Based on information and belief, Defendants were joint employers of Plaintiff under Kansas law based on their significant level of control and authority over Plaintiff's duties and responsibilities, and terms and conditions of Plaintiff's employment.

10. Based on information and belief, Defendants shared or co-determined those matters governing the essential terms and conditions of Plaintiff's employment.

## JURISDICTION AND VENUE

11.     Jurisdiction is proper over Defendant MV Realty of Kansas LLC because is a Kansas limited liability company with its principal place of business in the State of Kansas and because it transacted business in the State of Kansas and committed the alleged tortious acts, omissions, and occurrences giving rise to the claims alleged herein in the State of Kansas.

12.     Jurisdiction is proper over Defendant MV Realty PBC, LLC because, based on information and belief, it transacted business in the State of Kansas, committed the alleged tortious acts, omissions, and occurrences giving rise to the claims alleged herein in the State of Kansas, entered into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state, and/or because it caused injury to plaintiff in the State of Kansas arising out of alleged acts or omissions outside the state of Kansas when, at the time of the injury, it was engaged in solicitation or service activities in the state of Kansas or products, materials or things processed, serviced or manufactured by it anywhere were used or consumed in the state of Kansas in the ordinary course of trade or use.

13.     Based on information and belief, Defendant MV Realty PBC, LLC purposefully availed itself of the privilege of conducting activities in the State of Kansas, and Plaintiff's cause of action arises out of and/or relates to this Defendant's contacts with the State of Kansas.

14.     Venue is proper in this Court as the alleged tortious acts, omissions, and occurrences giving rise to the claims alleged occurred in Johnson County, Kansas.

## FACTUAL ALLEGATIONS

15.     Plaintiff began his employment with Defendant on or about March 28, 2022, in the position of realtor.

16.     Plaintiff was employed in Kansas and worked remotely from a home office.

17. Plaintiff was in sales training from March 28th until April 4, 2022.

18. On or about April 4, 2022, Plaintiff began selling Homeowner Benefit Agreements (HBAs) after he completed training.

19. During his first month selling HBAs, Plaintiff sold more HBA products than any other licensed agent in Kansas during this same period.

20. During the week of April 25, 2022, Plaintiff expressed concern about the HBA product to his broker, Joan Govero. Plaintiff also shared several links regarding bad reviews of the company and product.

21. Govero did not respond to Plaintiff's concerns and Plaintiff continued to perform the duties and responsibilities of his position.

22. While Plaintiff was on vacation in mid-May, he was assigned a new success manager. The new success manager to whom Plaintiff was assigned was Brandy Roesch.

23. When Plaintiff returned to work post vacation on May 15, 2022, he met with success manager Roesch.

24. During his meeting with Roesch, Plaintiff expressed concern about some of the problems associated with the HBA product, his concerns were that aspects of the HBA products violated the Realtor Code of Ethics, and Plaintiff suggested changes that could be made to improve the HBA product and comply with any ethical issues.

25.  More specifically, the aspects of the Realtor Code of Ethics that Plaintiff believed were being violated by the HBA product were:

**Article 3: Primary Duty to the Client**

A Realtor shall protect and promote the interests of his or her Client. This primary obligation does not relieve the Realtor of the responsibility of dealing fairly with all parties to the transaction.

**Article 6: Written Transaction Agreements**

Realtors shall ensure that agreements regarding real estate transactions are in writing in clear and understandable language, expressing the specific terms, conditions and obligations and commitments of the parties to the agreement. A copy of each final agreement shall be furnished to each party upon their signing or initialing and shall be dealt with in accordance with the instructions of the parties involved.

26.  With respect to Article 3 of the Realtor Code of Ethics, Plaintiff's concern was the 3% penalty associated with a HBA, if the client had a reverse mortgage in place. His concern was that the 3% penalty was not protecting the client, as the Code of Ethics requires, and was instead generating an additional profit to Defendant, to the detriment of the client.

27.  With respect to Article 6 of the Realtor Code of Ethics, Plaintiff's concern was that the HBA agreement did not clearly state that a penalty would occur when doing a reverse mortgage.

28.  Plaintiff also expressed concern that the documents associated with the HBA product did not clearly set forth the 3% penalty that would be incurred if the homeowner did a For Sale by Owner (FSBO) transaction.

29. The HBA product and the transactions associated with it are encompassed within the Kansas Consumer Protection Act ("KCPA").

30. Pursuant to Kan. Stat. Ann. § 50-623, entitled "Kansas consumer protection act; purpose; construction,"

> This act shall be construed liberally to promote the following policies:
> (a) To simplify, clarify and modernize the law governing consumer transactions;
> (b) to protect consumers from suppliers who commit deceptive and unconscionable practices;
> (c) to protect consumers from unbargained for warranty disclaimers; and
> (d) to provide consumers with a three-day cancellation period for door-to-door sales.

31. The provisions of the KCPA apply to "consumer transactions" which are defined as a sale, lease, assignment, or other disposition for value of property or services within Kansas to a consumer by a supplier with respect to any of these dispositions. Kan. Stat. Ann. § 50-624(c).

32. By definition, a "consumer transaction" includes the sale of services by a supplier. "Services" are defined in Kan. Stat. Ann. § 50-624(h) as work, labor, and other personal services, any other act performed for a consumer by a supplier.

33. A "supplier" means a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in, or enforces consumer transactions. Kan. Stat. Ann. § 50-624(i).

34. Under the KCPA, "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-626.

35. Further, "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction." Kan. Stat. Ann. § 50-627(a).

36. In response to Plaintiff's various concerns of ethical violations and in turn, violations of the Kansas Consumer Protection Act, Roesch stated that she would discuss Plaintiff's concerns at the managers' meeting that week.

37. Plaintiff did not receive any assurances from Roesch, following the managers' meeting, that the ethical issues associated with the HBA were being addressed.

38. On or about June 2, 2022, Plaintiff sent a letter to company owner, Amanda Zachman and company COO David Manchester.

39. In the letter Plaintiff specifically addressed the above-noted ethical issues associated with the HBA product.

40. In the letter, Plaintiff also stated:

"If MV decides not to modify this HBA agreement I will be forwarding information to the National Board of Realtors for their review. I will specifically ask them to look over this agreement and get their opinion on meeting the guidelines and standards set forth in our code of ethics. In any sale I have made.... I have told my customers not to participate in this program if they are going to do a FSBO or reverse mortgage. A sales pitch without these disclosures is really very misleading in my opinion. It only is looking out for the company and not the customer."

41. On June 7, 2022, Amanda Zachman responded to Plaintiff's letter claiming there were no conflicts, and the company was legally entitled to charge the 3% penalty.

42. On June 8, 2022, Plaintiff responded that he disagreed that the conduct complied with the code of ethics that realtors were obligated to follow.

43. Plaintiff was terminated an hour later because he did not "support the program in its current form."

44. Based on information and belief, the true reason for Plaintiff's termination was his reporting of concerns that the HBA product violated the Realtor Code of Ethics, which in turn violated of the Kansas Consumer Protection Act.

45. As a result of Defendants' retaliatory conduct, acts and omissions, Plaintiff has suffered and will continue to suffer emotional distress, lost wages and lost benefits.

46. At all times mentioned herein, the above-referenced individuals and/or employees were agents, servants, employees of Defendants and were at all such times acting within the course and scope of their employment, and/or their actions were expressly authorized or ratified by Defendants, making Defendants liable under the doctrine of respondeat superior.

## COUNT I
## Wrongful Termination in Violation of Public Policy

47. Plaintiff incorporates by reference the preceding paragraphs as thought fully set forth herein.

48. Defendants' aforementioned conduct violated Kansas public policy in that Defendants terminated Plaintiff because he reported ethical violations of the Realtor Code of Conduct, as it related to Defendants' sale of HBA products; and informed Defendants of his intent to contact the National Board of Realtors regarding the ethical violations.

49. The violations of the Realtor Code of Ethics that Plaintiff reported relating to the sale of Defendants' HBA product were:

**Article 3: Primary Duty to the Client**

A Realtor shall protect and promote the interests of his or her Client. This primary obligation does not relieve the Realtor of the responsibility of dealing fairly with all parties to the transaction.

**Article 6: Written Transaction Agreements**

Realtors shall ensure that agreements regarding real estate transactions are in writing in clear and understandable language, expressing the specific terms, conditions and obligations and commitments of the parties to the agreement. A copy of each final agreement shall be furnished to each party upon their signing or initialing and shall be dealt with in accordance with the instructions of the parties involved.

50. The reported violations of the Realtor Code of Ethics constituted violations of the Kansas Consumer Protection Act.

51. The provisions of the Kansas Consumer Protection Act apply to "consumer transactions" which are defined as a sale, lease, assignment, or other disposition for value of property or services within Kansas to a consumer by a supplier with respect to any of these dispositions. Kan. Stat. Ann. § 50-624(c).

52. By definition, a "consumer transaction" includes the sale of services by a supplier. "Services" are defined in Kan. Stat. Ann. § 50-624(h) as work, labor, and other personal services, any other act performed for a consumer by a supplier.

53. A "supplier" means a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in, or enforces consumer transactions. Kan. Stat. Ann. § 50-624(i).

54. The KCPA, including Kan. Stat. Ann. §§ 50-623, 50-624, 50-626, and 50-627, are integral parts of the public policy of the State of Kansas and a reasonably prudent person would have concluded Defendants or their employees were engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, or the general welfare of the State of Kansas.

*Clerk of the District Court, Johnson County Kansas*
*08/26/22   03:22pm MM*

55. Plaintiff was terminated six days after engaging in the protected activity of sending a letter to owner Amanda Zachman and COO David Manchester regarding the ethical issues with Defendants' HBA product.

56. Plaintiff was terminated on June 8, 2022, one hour after he reiterated his belief that the HBA product being sold by Defendants violated the Realtor Code of Ethics, which in turn is a violation of the Kansas Consumer Protection Act.

57. Defendants knew Plaintiff engaged in protected activity before it discharged Plaintiff.

58. This protected activity was done out of a good faith.

59. Based on information and belief, Plaintiff was terminated because he reported that the HBA product violated the Code of Ethics, and the Kansas Consumer Protection Act, and/or because of his expressed intent to contact the National Board of Realtors regarding the ethical violations posed by Defendants' product.

60. Based on information and belief, Defendants' termination of Plaintiff's employment was in retaliation for Plaintiff's reporting of concerns relating to the HBA product.

61. Plaintiff's protected activity was a contributing or motivating or substantial factor in Defendants' decision to terminate Plaintiff's employment.

62. As a result of Defendants' conduct, Plaintiff incurred lost wages and benefits.

63. As a result of Defendants' conduct, Plaintiff has suffered and will continue to suffer emotional distress.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants on Count I of his Petition in an amount in excess of $75,000.00, for an award of compensatory damages, including past and future lost wages, lost benefits, front pay, compensation for emotional distress,

prejudgment and post judgment interest as provided by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and allegations in this Petition for Damages.

                                                **HOLMAN SCHIAVONE, LLC**

                                                By: _/s/ Anne Schiavone_
                                                        Anne Schiavone, KS Bar #19669
                                                        Brandon Corl, KS Bar #23043
                                                        4600 Madison Avenue, Suite 810
                                                        Kansas City, Missouri 64112
                                                        Telephone: 816.283.8738
                                                        Facsimile: 816.283.8739
                                                        aschiavone@hslawllc.com
                                                        bcorl@hslawllc.com

                                                        ATTORNEYS FOR PLAINTIFF