## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY

| | | |
|---|---|---|
| MARK HUMMELL | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| v. | ) | |
| | ) | **Case No. 2:22-CV-02383** |
| MV REALTY OF KANSAS LLC | ) | |
| And MV REALTY PBC, LLC | ) | |
| | ) | |
| *Defendants.* | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants MV Realty of Kansas, LLC and MV Realty PBC, LLC ("Defendants"), move

the court for an order dismissing Plaintiff's Complaint for failing to state a claim. Plaintiff

attempts to assert a claim for wrongful termination in violation of public policy, but such claim

fails because Plaintiff does not allege he reported to anyone that Defendants violated any rule,

regulation, or law pertaining to public health, safety and the general welfare. For the reasons set

forth below, the Court should grant Defendants' Motion to Dismiss.

## I.      NATURE OF THE CASE

Plaintiff claims he was jointly employed by Defendants as a realtor to sell Homeowner

Benefit Agreements ("HBA") and was terminated in retaliation for threatening to report

Defendants to the National Board of Realtors for his perceived violations of a Realtor Code of

Ethics based upon his personal interpretation of the HBA.

## II.     STATEMENT OF FACTS

1.      Plaintiff alleges he was jointly employed by Defendants as a realtor from

March 28, 2022 to June 8, 2022. *See* ECF Doc.1(referred to as "Complaint") at ¶¶ 1, 2, 15, 42

and 43.

2. Plaintiff attended sales training from March 28 until April 4, 2022. *Id.* at ¶ 17.

3. Following his training, on or about April 4, 2022, Plaintiff began selling Homeowner Benefit Agreements ("HBA"). *Id*. at ¶ 18.

4. Plaintiff claims he expressed concern about the HBA to his broker. *Id*. at ¶ 20.

5. Receiving no response from his broker, Plaintiff met with his success manager and expressed his concern that the HBA violated the Realtor Code of Ethics and suggested changes to the HBA. *Id.* at ¶ 24.

6. Plaintiff believed the HBA violated Articles 3 and 6 of the Realtor Code of Ethics, which Articles Plaintiff contends provide:

> **Article 3: Primary Duty to Client**
>
> A Realtor shall protect and promote the interests of his or her Client. The primary obligation does not relieve the Realtor of the responsibility of dealing fairly with all parties to the transaction.
>
> **Article 6: Written Transaction Agreements**
>
> Realtors shall ensure that agreements regarding real estate transactions are in writing in clear and understandable language, expressing the specific terms, conditions and obligations and commitments of the parties to the agreement. A copy of each final agreement shall be furnished to each party upon their signing or initialing and shall be dealt with in accordance with the instructions of the parties involved.

*Id.* at ¶ 25.

7. Plaintiff was concerned that the HBA called for a 3% penalty if a client had a reverse mortgage and that such penalty generated a profit to Defendants to the detriment of the client in violation of Article 3 of the Realtor Code of Ethics. *Id*. at ¶ 26.

8. Plaintiff expressed concerns that the HBA did not clearly state that a penalty would occur when doing a reverse mortgage or a For Sale by Owner transaction in violation of Article 6 of the Realtor Code of Ethics. *Id*. at ¶¶ 27 and 28.

9.      Plaintiff did not receive assurances from his success manager that his concerns about these alleged ethical issues were being addressed, so he sent a letter on June 2, 2022 to company owner, Amanda Zachman and company COO David Manchester addressing his concerns.  *Id.* at ¶¶ 37, 38 and 39.

10.      In this letter, Plaintiff also stated that if Defendants did not modify the HBA, he would forward the information to the National Board of Realtors for its review and request an opinion on whether the HBA complied with the Code of Ethics.  *Id*. at ¶ 40.

11.      Ms. Zachman responded to Plaintiff on June 7, 2022, advising there were no conflicts and the company was legally entitled to charge the 3% penalty.  *Id.* at ¶ 41.

12.      Plaintiff responded to Ms. Zachman on June 8, 2022 that he disagreed with her opinion that the HBA was legal and he was terminated later that day because he did not "support the program in its current form."  *Id*. at ¶¶ 42 and 43.

## III.     QUESTION PRESENTED

**A.      Can a Plaintiff state a claim for wrongful termination in violation of public policy arising from his personal belief that a Homeowner Benefit Agreement violated a Realtor Code of Ethics?**

## IV.     ARGUMENTS AND AUTHORITIES

### A.      Motion to Dismiss Standard

Pursuant to Fed. R. Civ. P. 12(b)(6), this Court must dismiss any claim that fails to state a plausible claim for relief. To state a viable claim, a complaint must contain factual assertions describing the grounds entitling the plaintiffs to relief from the named defendant. *See* Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Tenth Circuit, in *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011), identified the two "working principles" that underlie the *Twombly* standard. *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). First, this Court ignores legal conclusions, labels, and a formulaic recitation of the

elements. *See* 656 F.3d at 1214. Second, a plaintiff must allege facts that make his or her claim plausible. Simply put, "a plaintiff must offer sufficient factual allegations to 'raise a right to relief above the speculative level.'" *Id.* (citing *Twombly*).

The factual allegations contained in the Complaint must be enough to "nudge" the claim across the line from conceivable to plausible. *See*, *e.g.*, *Ridge At Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In other words, the "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id.* (emphasis in original). Plaintiff's Complaint fails to satisfy this standard, and it must be dismissed.

**B.    Plaintiff Fails to State a Claim for Public Policy Wrongful Discharge**

Plaintiff's sole claim in this case is wrongful discharge in violation of public policy. Kansas employment law is grounded in the doctrine of employment-at-will. *Ramirez v. IBP*, *Inc.*, 913 F. Supp. 1421, 1428 (D. Kan. 1995). In the absence of an express or implied contract of duration or limiting reasons for discharge between the employer and employee, employment is terminable at the will of either party for any reason or for no reason at all. *Id.*

As a narrow exception to the employment-at-will doctrine, Kansas courts recognize the tort of retaliatory discharge in violation of public policy. *Palmer v. Brown*, 752 P.2d 685, 689-90 (Kan. 1988). To maintain a retaliatory discharge action under *Palmer,* a plaintiff must prove each of the following elements: (1) "a reasonably prudent person would have concluded the employee's co-worker or employer was engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare;" (2) "the employer had knowledge of the employee's reporting of such violation prior to discharge of the employee;" and (3) "the employee was discharged in retaliation for making the report." *Id.* at 690.

4

Plaintiff is therefore required to show that a reasonably prudent person would conclude that Defendants engaged in conduct, "in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare." *Id.* The violation must be serious, *see id.* at 689–90, and the public policy at issue "must be 'so definite and fixed that its existence is not subject to any substantial doubt.'" *Goodman v. Wesley Med. Ctr., 78* P.3d 817, 823 (Kan. 2003) (quoting *Palmer,* 752 P.2d at 687–88). This is so because "*Palmer* simply was not meant to endow every workplace dispute over the water cooler on company practices ... with whistle-blower overtones." *Fowler v. Criticare Home Health Servs., Inc.,* 10 P.3d 8, 15 (Kan. Ct. App. 2000). The exception applies only when an employee's discharge from employment has seriously contravened a very clear public policy. *Conrad v. Bd. of Johnson County Commissioners,* 237 F. Supp. 2d 1204, 1264 (D. Kan. 2002). "The Kansas Supreme Court has made it clear that this is a very hard test to satisfy." *Id.* at 1265. Plaintiff's factual allegations fail to establish that his discharge contravened a very clear public policy.

Plaintiff merely alleges that he complained to Defendants that in his opinion, legal terms of the HBA violated a "Realtor Code of Ethics" because the terms were ambiguous and contained a penalty clause that benefitted Defendants. "Public policy cannot be determined on a subjective basis." *Goodman,* 78 P. 3d at 823. Whistleblower claims must be predicated upon reported violations of *definite and specific* rules, regulations, and laws. *Goodman,* 78 P.3d at 822. "It would be both troublesome and unsettling to the state of the law if we were to allow a retaliatory discharge claim to be based on a personal opinion of wrongdoing. Such a holding, under these circumstances, would effectively do away with the employment -at-will doctrine, which has become a part of Kansas public policy." *Id.* at 822-23. A "Realtor Code of Ethics" does not constitute a rule, regulation or law and does not establish clear public policy in Kansas.

Plaintiff makes no allegation that he complained to anyone that Defendants violated any rule, regulation or law.  Rather, Plaintiff's complaint derives from his reported concerns to Defendants that the HBA violated Article 3 and Article 6 of a "Realtor Code of Ethics."[1] Plaintiff does not reference the agency or entity that promulgates and enforces his referenced code of ethics or whether such code of ethics applies to the HBA or Defendants.  Per Plaintiff, Articles 3 and 6 from the alleged "Realtor Code of Ethics" upon which his complaint was based provide:

> **Article 3:  Primary Duty to Client**
>
> A Realtor shall protect and promote the interests of his or her Client.  The primary obligation does not relieve the Realtor of the responsibility of dealing fairly with all parties to the transaction.
>
> **Article 6:  Written Transaction Agreements**
>
> Realtors shall ensure that agreements regarding real estate transactions are in writing in clear and understandable language, expressing the specific terms, conditions and obligations and commitments of the parties to the agreement.  A copy of each final agreement shall be furnished to each party upon their signing or initialing and shall be dealt with in accordance with the instructions of the parties involved.

Complaint at ¶ 25.

Even if Articles 3 and 6 were contained within a "Realtor Code of Ethics," such does not amount to clearly established public policy in Kansas.  To bring a common law wrongful discharge claim, Plaintiff must establish that Defendants violated **Kansas** public policy. *See Hysten v. Burlington Northern Santa Fe Ry. Co.*, 277 Kan. 551, 108 P.3d 437, 440 (Kan. 2004) ("Our recognition of such causes of action is limited to wrongful discharge in violation of state

---

[1] Defendants are unaware of Plaintiff's referenced "Realtor Code of Ethics."  There is a National Association of REALTORS® ("NAR"), a professional organization whose members are called "REALTORS®" and whose members must subscribe to the REALTORS® Code of Ethics ("Code").[1]  Articles 3 and 6 from this Code simply require cooperation among brokers and require client consent if a REALTOR® profits from a recommendation of a real estate product.  Clearly Plaintiff is not referencing Articles 3 and 6 from this Code.

public policy clearly declared by the legislature or by the courts. Thus our first step is an examination of Kansas public policy ... as found in its constitution, its statutory enactments, and its judicial decisions.") (citations omitted).  Plaintiff has failed to allege any fact that he reported to anyone that Defendants violated Kansas public policy as found in its constitution, statutory enactments or its judicial decisions.  There is no strongly held Kansas public policy embedded in the unknown "Realtor's Code of Ethics" relied upon by Plaintiff.  No Kansas court has declared that the ethical code of a private professional organization that applies exclusively to its members can be a source of recognized public policy.  Plaintiff does not allege that the HBA is illegal or violates any Kansas law, statute or judicial decision and does not allege he made any such complaint to Defendants.

Plaintiff makes the conclusory statement without supporting facts that his reported violations of an unknown "Realtor Code of Ethics" constituted violations of the Kansas Consumer Protection Act. ("KCPA") (Complaint ¶ 50).  First, Plaintiff does not allege that he raised any concerns that the HBA violated the KCPA.  Second, the KCPA is not implicated based upon Plaintiff's reported concerns.  The KCPA should be "construed ... to ... protect consumers from suppliers who commit deceptive and unconscionable practices." K.S.A. 50–623.  However, "Transactions that merely appear unfair, or in retrospect are bad bargains, do not state a claim under the KCPA. [Citation omitted.].... Where a record is 'devoid of any evidence of deceptive or oppressive practices overreaching, intentional misstatements, or concealment of facts,' there is no claim under the KCPA. [Citation omitted.]" *Gonzales v. Associates Financial Serv. Co. of Kansas,* 967 P.2d 312, 328 (Kan. 1998).

Plaintiff makes no factual allegation that the HBA involves a sale, lease, assignment or other disposition for value of property or services to a consumer.  Plaintiff does not allege that

7

the HBA constitutes a real estate transaction or that it constitutes a listing agreement. Plaintiff does not allege that the Defendants engaged in deceptive or oppressive practices or made any intentional misstatements of fact. Plaintiff does not allege the HBA is fraudulent. Plaintiff's complaint was based on nothing more than his personal interpretation of the legal effect of the HBA. Defendants' owner advised Plaintiff his personal interpretation of the HBA was incorrect. Plaintiff simply disagrees with the professional opinion of Defendants' owner.

Plaintiff fails to allege any fact that a reasonably prudent person would have concluded Defendants were engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare clearly established by the Kansas legislature or its courts. Plaintiff has failed to state a claim for public policy wrongful discharge and the Complaint should be dismissed.

WHEREFORE, Defendants respectfully request the Court grant the instant motion, dismiss the Complaint with prejudice, award Defendants their costs and such further relief as the Court deems just.

Dated: September 30, 2022                    LATHROP GPM LLP


                                             By:  */s/ Rebecca S. Yocum*
                                             Rebecca S. Yocum, KS #14222
                                             2345 Grand Boulevard, Suite 2200
                                             Kansas City, MO 64108
                                             (816) 460-5657 (direct)
                                             (816) 292-2001 (fax)
                                             rebecca.yocum@lathropgpm.com

                                             ATTORNEYS FOR DEFENDANTS